ELLIS, Judge.
Plaintiffs; Thomas-H. Fike and his employer, United Trading Stamp Company, instituted this suit against defendants, Oswald McGraw and his insurer, the General Accident Fire and Life Assurance Corporation, Limited, seeking to recove'r the sum of $614.94 for property damage and the sum of $6,582.25 for personal injuries and resulting expenses and disabilities. The damages'claimed: were incurred as a result of an intersectional collision between the truck belonging .to the United Trading Stamp Company and driven by its employee, Thomas H. • Fike and a Dodge automobile owned and driven by Oswald W. McGraw.
Defendants answered, admitting’ the occurrence" of thé collision, but urging that* the proximate cause of the accident was Fike’s negligent operation of his ‘employer’s truck. They also.'reconvened for property damages to the Dodge in the sum of $371.-85.
After trial was had on the merits, judgment was rendered in favor of the plaintiffs allowing the claim for $614.94 to cover the property damage to the truck and $3,817 upon the claims arising out of the personal injury incurred. Defendants’ re-conventional demand was dismissed. From this judgment, defendants have perfected this appeal.
The following account of the occurrence is, in our opinion, substantially correct:
On July 30, 1954, at approximately 11:30 A.M. Thomas H. Fike (hereinafter referred to as “plaintiff”) was driving south on Louisiana Highway 152, a superior thoroughfare. He was in his employer’s Chevrolet panel truck and traveling at a speed between 55 and 60 miles per hour. His son, Glenn, was the only other occupant of the truck. North of the intersection at which the accident occurred is a hill, the crest of which is approximately 630 feet from the intersection.- Plaintiff testified that shortly after clearing the crest of the hill he saw McGraw’s car slowly proceeding in the vicinity of the stop sign on Louisiana Highway 35. The evidence indicates that the first time plaintiff saw McGraw’s car moving slowly toward the intersection the plaintiff was at a point between 630 feet and 315 feet from the intersection, and that he assumed that the defendant would obey the law and stop before entering the intersection.
At this time, McGraw was driving his automobile west on Louisiana Highway 35 and his 12 year old daughter, Lanell, was with him. The preponderance of the evidence indicates that he did come to a stop at a point approximately parallel to the stop sign, which was located 42 feet from the intersection. He then looked both ways and, seeing nothing, proceeded, looking neither to the left nor to the right; into the intersection.
Meanwhile, the plaintiff who had looked to the right after first noticing McGraw, be *715 came alarmed as McGraw drove his automobile directly into the path of plaintiff’s truck. The plaintiff applied his brakes and swerved sharply to the right in a vain attempt to avoid the ensuing collision.
The arguments concerning Fike’s distance from the intersection when he first observed McGraw’s automobile are detailed and voluminous. However, it is our considered opinion that the decisive factors are as follows:
Fike was traveling on a through highway at a proper speed under existing conditions. Shortly after clearing the crest of.the hill, he observed the intersection sign and McGraw’s automobile slowly proceeding toward the intersection. He then checked Louisiana Highway 35 to the west. On the other hand, McGraw stopped long before reaching the intersection (at least 42 feet) looked both ways and then proceeded towards the admittedly dangerous intersection without taking any further precautions. Either Fike had not come over the hill when McGraw looked to the right, or McGraw did not observe his presence. In either event, McGraw was guilty of negligence which was the proximate cause of the collision. His partial compliance with the stop sign law was impractical and ineffectual. His unheeding advance into the intersection after a premature halt was obvious negligence.
Stating that, since Fike knew of the intersection, he was charged by law with the knowledge that an intersection was dangerous, defendants cite the following rule set forth in Comeaux v. Blanchet, La.App., 69 So.2d 527, 531:
“ * * * If he is charged with knowledge that a street intersection is a place of danger, and he heedlessly drives into one, without keeping a proper lookout to the left, as well as in front and to his right, then certainly he ought not to complain about a collision which, if he had been exercising ordinary care and caution, he could have avoided.”
However, the facts presented in the cited case differ from those of the case at bar so that any rule evolved in the Comeaux case is inapplicable in the instant case. It is apparent from the record that Fike looked to his left, his right and straight ahead in approaching the intersection.
The rate of speed at which Fike was traveling was questioned by defendants who quoted the following rule set forth in the case of Miller v. Abshire, La.App., 68 So.2d 143, 147:
“ ‘ * * * irrespective of statute, it is the duty of such a driver in the exercise of ordinary care, on approaching or traversing a street crossing, to operate his car at a rate of speed which is lawful and reasonable under the circumstances and to have it under such control so that he may stop it so as to avoid abstractions or objects crossing his path. The question of what, within this rule, is an improper rate of speed and whether the motorist retained the requisite control of the car being one of fact.’ ”
The qualification of this rule is made later in the case in the following language:
“ * * * If, however, the driver on the favored street sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, he may himself be under the duty of stopping to avoid a collision at the crossing, at the risk of having his recovery defeated by reason of his being contributorily negligent.”
Applying these rules to the facts before the court it is evident that the plaintiff was unaware of McGraw’s intention to enter the intersection until McGraw had done so. At this time, taking into consideration normal reaction time, plaintiff applied his brakes, swerved sharply to the right and made every effort to avoid the collision.
In the case of La Furia v. Tarver, La. App., 86 So.2d 232, neither driver involved *716 .in the- intersectional collision saw the other ..until immediately before the impact. Although it was cited by defendants as authority for the proposition that the vehicle on the superior street has a duty of vigilance when crossing an intersection, it is not in point because again the fact situation is entirely different.
The following principle from the case of Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667, 669, seems applicable to the fact situation herein presented :
. “ * ‡ * it does not appear to us, even if Gautreaux observed Mrs. Barrow failing to stop at the stopsign, that he had — thus far having proceeded free of negligence and under no duty up until that time to anticipate the inferior motorist’s failure to observe her legal duty to stop — physical opportunity to avoid the collision. It is to be remembered that Mrs. Barrow’s entry and crossing of the intersection occurred within 1 to seconds. Thus the sole proximate cause of the accident was Mrs. Barrow’s negligent entry onto the main thoroughfare in the face of oncoming traffic, Robbins v. Mydland, La.App. 1 Cir., 81 So.2d 561.”
As stated above, the Lower Court • rendered judgment in favor of the plaintiff for $3,817 which was itemized as follows:
$2,500 for pain and suffering;
100 expenses for son’s assistance during temporary disability;
82.25 medical expenses
134.75 commission to employment agency for securing new employment;
1,000 diminution of earning capacity.
.The record does not substantiate the allowance of $1,000 for diminution of earning capacity nor the allowance of $134.75, commission to the employment agency, for there is no permanent disability claim, and although plaintiff changed his employment shortly after the accident, it appears that he did so of his own free will and not of necessity.- The $100 allowed plaintiff for the expenses incurred while his son accompanied him on the road must also be disallowed since it was not set forth in plaintiff’s petition nor mentioned in his prayer.
For these reasons the judgment of the District Court is amended by reducing it by the amount of $1,234.75 and, as thus amended, it is affirmed.