TATE, Judge.
On July 2, 1956, a truck owned and operated by plaintiff was struck by defendant Holomon’s oncoming automobile. Plaintiff herein, and in companion suits his two passengers (McCalopé v. Holomon, La.App., 110 So.2d 780, and Walker v. Holomon, La.App., 110 So.2d 780), sued Holomon and his liability insurer to recover damages for personal and other injuries resulting from the accident. These plaintiffs appeal from the dismissal after trial of their claims.
The accident occurred shortly after midnight a few miles west of Baton Rouge on U. S. Highway 90, a main thoroughfare of this State. This highway is composed of four traffic lanes, each of a width of twelve feet. The two northern lanes (reserved for westbound traffic) are separated at the place of the accident from the two southern lanes (reserved for eastbound traffic) by a neutral ground through which at various intervals “breaks” or crossings permit the passage of traffic from the north to the south side of the highway.
At the time of the accident, the undisputed evidence shows that plaintiffs’ vehicle had — while in the process of crossing from the north side of the highway in order to turn east towards Baton Rouge — stopped so as to obstruct completely the two eastbound lanes of the highway. Whether this obstruction had been created for an appreciable interval of time forms the chief factual issue of this appeal.
Plaintiffs’ vehicle was a Chevrolet two-ton truck, 26' in length, with a canvas-covered body. It was not loaded. The preponderant evidence shows that its presence was indicated by its lights, and there is no evidence to support a conclusion that the presence of this vehicle across the southerly half of the highway was not readily apparent to eastbound traffic oncoming thereupon.
Defendant Holomon suffered a complete amnesia as to the events surrounding the accident as a result of the shock and injuries suffered therein, so the court does not have the benefit of his version of the accident. He had no recollection whatsoever as to his speed at the time, although stating he often drove 60 or 70 mph. The occupants of plaintiffs’ truck did not observe his approach before the impact. A bystander estimated his speed to he 55-601 mph just before the crash, the results of which are not shown to be inconsistent with such a rate. Any unlawful or excessive speed on the part of the defendant driver must be held not to have been proven.
When a collision occurs between a vehicle entering a through highway from the side and a vehicle traveling at a reasonable speed on the main highway, the driver of the latter vehicle is absolved from blame if unable reasonably to avoid an accident after an entry by the inferior vehicle, because drivers on through highways are not required to anticipate the sudden emergence across and into their path of vehicles with an inferior right of way, but are entitled ordinarily to assume that the inferior traffic will accord vehicles on the main *778 highway the right of way to which the latter are entitled. Steele for Use and Benefit of Steele v. State Farm Mut. Ins. Co., 235 La. 564, 105 So.2d 222; Guillory v. Frank, La.App., 1 Cir., 95 So.2d 197, certiorari denied; Fike v. McGraw, La.App. 1 Cir., 88 So.2d 713; Robbins v. Mydland, La.App. 1 Cir., 81 So.2d 561.
But of course the defendant driver might be negligent for failing to observe the clearly visible plaintiff’s truck and to stop if the truck was present across the highway a sufficient interval of time. Geoghegan v. Greyhound Corp., 226 La. 405, 76 So.2d 412; Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238. Further, “Under the last clear chance doctrine as enunciated by Louisiana jurisprudence, a motorist who observes or who should by the exercise of reasonable care have observed another in a position of peril may be held responsible for injuries caused 'by an ensuing collision with the other despite any contributory negligence on the part of the latter if, after the duty to make such observation arose, the motorist could reasonably have avoided the accident,” Belshe v. Gant, 235 La. 17, 102 So.2d 477, at page 479. See Rector v. Allied Van Lines, La.App. 2 Cir., 198 So. 516, cer-tiorari denied, where the sleeping driver and passengers of a car parked after dark protruding upon a highway recovered for their injuries because the driver of the truck which struck them had the last clear chance to avoid the accident; see also: Alvares v. Rush, La.App. 2 Cir., 108 So.2d 797.
The defendants argue that the plaintiffs’ truck was negligently stalled across the highway, while plaintiffs strenuously contend that the obstruction of the highway by their truck was caused by the negligent maneuvering of a car backed from the southern shoulder by one James Jackson. Considering the circumstances of the present accident, which contention is correct is immaterial for purposes of deciding the primary question of this' suit: that is, whether the defendant Holomon breached any duty to plaintiffs so as to be liable for their injuries. Whatever negligence on the part of Jackson and/or plaintiffs’ driver may have occasioned the presence of plaintiffs’ truck across the highway, we are solely concerned under the facts of this case with whether or not Holo-mon approaching at a lawful speed had a reasonable opportunity to observe plaintiff’s truck obstructing the highway and thereafter to avoid the accident — in short, did plaintiffs’ vehicle emerge and obstruct defendant Holomon’s passage sufficiently in advance of the latter’s approach so that some deficiency of lookout or control upon his part caused or contributed to the accident?
Plaintiff passenger McCalop testified that the truck was stopped blocking the highway “three or four seconds.” (Tr. 101.) Plaintiff passenger Walker stated that it was “six or seven seconds. * * * it could have been a second or two either way.” (Tr. 115.) The plaintiff driver testified that it was “a matter of a few seconds * * * six,.seven or eight seconds * * *. It may have been a little more. I don’t know * * * I would say anything between eight or ten seconds, something along in there.” (Tr. 71.)
There is no testimony as to whether the defendants’ brakes were applied prior to the impact, the evidence not reflecting that skidmarks were so made by defendants’ vehicle. None of the plaintiffs in the truck testified that they observed defendants’ vehicle approaching prior to the impact. If defendants’ brakes were not applied prior to the accident, we might infer either that the defendant driver was grossly deficient in lookout and in braking, or else contrariwise that plaintiffs’ truck appeared in said driver’s path so suddenly that the latter had no opportunity to apply his brakes. While either inference might be reasonable, the latter is the more appropriate of the two to make since the plaintiffs have the burden of producing any testimony indicating a negligently continued approach by *779 Holomon towards a clearly visible obstruction across the highway.
We are unable to say from their testimony that the plaintiffs have borne their burden of proving by a preponderance of the evidence that their vehicle obstructed the highway more than momentarily or for so long a time that any deficiency of observation or control on the part of Holo-mon contributed to the accident thus solely caused by the unusually hazardous obstruction by the plaintiffs’ truck of the entire eastbound roadway of this major highway.
At this point, however, we must frankly note that in dismissing plaintiffs’ suits the trial court placed some importance upon the testimony of the investigating state trooper that plaintiff Franklin had stated to him immediately after the accident that the truck had been parked across the highway “a minute or two” and that (Franklin) had known the defendant’s car was going to hit him from the time it was 1,000 feet away. Reliance was also placed upon the testimony of the defendants’ witness Ethel Mae Joseph that the truck had obstructed the highway for a minute or more before the collision. If the facts reflected by such testimony are true, then under the jurisprudence above-cited it is quite probable that negligence on the part of defendant Holomon was wholly or partially responsible for the present accident.
At the trial, however, the plaintiff driver Franklin, apparently testified under oath that he did not see defendants’ car before the impact; in his testimony at Tr. 25 he stated: “’Well, after I stopped for this [i. e., the Jackson] car, then I blew my horn and I did holler. By the time I looked around and time I saw his [i. e., the defendant Holoman’s], he hit me.” (Mc-Calope, sitting on the right hand side of the truck, denied seeing defendants’ car before the impact, Tr. 86.) We do not think plaintiff Franklin’s alleged admission to the trooper at the time of the accident that he saw defendants’ car approaching unabated towards the obstructing truck for 1,000 feet can be used (by itself) to prove such fact which is favorable to plaintiffs’ claim, since this unsworn “admission” is contradicted by the sworn testimony of this plaintiff himself at the trial and since properly speaking “admissions are the words or acts of a party opponent * * * offered as evidence against him”, McCormack on Evidence (1954), Section 239 at p. 502 (Italics ours.)
And the testimony of defendants’ witness Ethel Mae Joseph, the only witness other than the occupants of the car with opportunity to observe the approach of the defendants’ car toward the stopped truck, is (as urged by able counsel for plaintiffs) shown by the record to be very inaccurate if not deliberately untruthful. This witness testified that the plaintiffs’ truck was stopped across the highway “about a minute, maybe more”, before the impact (Tr. 231.) (In her statement given to defendant insurer’s adjuster three weeks after the accident, ten months before the trial, she estimated that the truck “stopped in that position for about 3 or 4 minutes”, Exhibit Joseph 1.) But we note, among her more flagrant inaccuracies: her positive and reiterated statement that one of the passengers climbed from underneath the driver’s side of the vehicle (allegedly to request her not to tell the police he was driving, because he had no driver’s license; however, the evidence unmistakeably shows that the said passenger was an experienced truck driver with license, and that the owner and not the passenger was driving), whereas the investigating policeman and all other witnesses testify that no one could leave the truck from the driver’s door because the truck was on its left side after the accident; and her statement that the plaintiffs’ truck crossed the neutral ground over the raised island thereof rather than through the break or crossing, whereas the testimony of the investigating officer and all witnesses as to the point of impact shows positively that her statement was inaccurate and that the truck had indeed crossed through the break in the neutral ground as plaintiffs testified.
*780 Under the circumstances as reflected by the particular record before us, we must hold that the plaintiffs have not proved which version of the accident is correct— that to which the plaintiffs testify by which their own claim is defeated, or the contradictory version to which defendants’ witnesses testify, the correctness of which is denied by the plaintiffs. We cannot say that plaintiffs’ case has been proved by a preponderance of the evidence as required when testimony which might so prove their case is assailed by plaintiffs as (and appears to be) unreliable and is contradicted by plaintiffs’ own sworn testimony by which the defendant driver is exonerated from liability.
For the foregoing reasons, the judgment of the District Court dismissing plaintiffs’ suit is affirmed.
Affirmed.