REID, Judge.
Plaintiffs Betty M. Ricardo, Joseph E. Ricardo Sr., Margaret M. Ricardo, Virgie Brown Ricardo, and Joseph E. Ricardo Jr., individually and as administrator of the estate of his minor son Juan Ricardo filed this suit on April 15, 1966, against Ivan Johnson and American Indemnity Company, insurer of the car owned by Betty M. Ricardo.
The claim for damages was based on an accident that happened between a 1964 Rambler owned by Betty M. Ricardo and driven by Willie Ferchaud in which the remaining plaintiffs were guest passengers, and a 1957 Dodge owned and operated by Ivan Johnson. The Ricardo car was traveling south on Eden Street and the Johnson car was proceeding easterly on Labauve Street, all in the city of Plaque-mine, Louisiana.
The intersection of Eden Street and Labauve Street was controlled by a stop sign. The traffic on Labauve Street was directed to yield the right of way to traffic on Eden Street. The Ricardo car, a Rambler, was struck about the middle of the right side by the Johnson car, the Dodge, causing damages to the passengers. Plaintiffs allege that the accident was caused by the joint negligence of Ivan Johnson and Willie Ferchaud.
Johnson did not file an answer, nor was he represented by counsel and a preliminary default was entered on behalf of plaintiff on June 2, 1966.
The Trial Judge, without assigning written reasons but stating orally that he found no negligence whatsoever on the part of Willie Ferchaud, and that the sole and only cause of the accident was the negligence of Ivan Johnson, rendered a judgment in favor of the plaintiffs and against Ivan Johnson in the following amounts: *147 Betty Ricardo, $524.50; Joseph Ricardo, $764.50; Margaret Ricardo, $712.00; Virgie Brown Ricardo, $707.50; Joseph E. Ricardo, Jr., $50.50; Joseph E. Ricardo as administrator of the estate of the minor son, Juan Ricardo, $150.00. He dismissed the suit against American Indemnity Company.
The suit against American Indemnity Company was based on the alleged negligence of Willie Ferchaud, driver of the insured car, and while they did not urge in the original petition, or in the trial in the District Court the existence of the uninsured motorist coverage they urged that judgment be reversed herein as to the American Indemnity Company based on the uninsured motorist coverage that would entitle plaintiffs to recover against American Indemnity Company should the injuries be caused solely by the fault of one who was uninsured by a policy of public liability insurance at the time of the accident. The Johnson car was not insured.
From this judgment plaintiffs have appealed devolutively to this Court.
Appellants set forth the following specifications of errors:
“SPECIFICATION OF ERRORS:
I.
The Court erred in determining that the sole and proximate cause of the accident was the negligence of Ivan Johnson, because there is ample evidence to support the finding that the accident was caused by the joint and concurrent negligence of Willie Ferchaud and Ivan Johnson.
II.
Alternatively, if the sole cause of the accident was the negligence of Ivan Johnson, the Court erred in failing to award judgments in favor of plaintiffs and against American Indemnity Company and basing said recovery on the existence of Uninsured Motorist Coverage which would have entitled the plaintiffs to have recovery against American Indemnity Company should, the injuries be caused solely by the fault of one who was uninsured by a policy of public liability at the time of the accident.
III.
The amount of damages awarded to the plaintiffs insofar as the defendant, American Indemnity Company is concerned was inadequate since the Trial Judge in rendering the awards solely against Ivan Johnson must have taken into consideration the fact that Ivan Johnson was uninsured and his resulting lack of financial ability to respond to adequate judgments.”
There is very little dispute about the facts in this case. There were only three witnesses who testified as to how the accident occurred, namely, Joseph Ricardo, Ivan Johnson and Willie Ferchaud. The remaining plaintiffs were asleep in the car at the time the accident happened which was around eleven o’clock at night.
There is no doubt but what Willie Fer-chaud was traveling in a southerly direction on Eden Street which was a right of way street. Ferchaud testified that he did not see the Johnson car until he was in the intersection and the Johnson car struck him on the right side at about the middle of the car and turned the car over.
Johnson testified that he did not see the Ricardo car until it was right in front of him. He had been to Plaquemine looking for a Bingo game and when he did not find one had a beer with his companion and had started home in Napoleonville. He stated that was the first time he had driven a car in Plaquemine on this street, and he did not know that Eden Street was the right of way street. He did not see the stop sign which he claims was covered by an obstruction.
There is no evidence as to how far the driver of either car could see up the other *148 street. The Trial Judge commented during the trial “Of course there is not a wide open corner in the city of Plaquemine.”
The drivérs of both cars testified that as far as they knew there was nothing to obstruct their vision, and neither saw the other car until just about the time the accident happened. Neither driver of the cars was speeding, they were both traveling at about thirty miles an hour.
Plaintiffs rely primarily on the landmark case of Randall v. Baton Rouge Bus Company, Inc., 240 La. 527, 124 So.2d 535. This case is the authority of the proposition of law that a motorist on a superior street, realizing in time that a motorist on an inferior street was continuing his approach and will obstruct superior motorist’s passage across the intersection and should he fail to take every precaution to avoid collision he is guilty of negligence. Further holds the duty of a motorist on the favored street is to exercise ordinary care and maintain at all times proper lookout and should see what is obvious. It further holds that when a motorist looks and sees, or should have looked and seen, that another by obvious actions is about to ignore traffic signs it is such motorist’s duty to protect him as well as himself by using best judgment under the circumstances of avoiding or minimizing any impending peril. We have no quarrel with this case but we do not think that the facts fit the instant case.
In the Randall case, supra, the record reveals that the motorist on the favored street was a distance of 97 feet from the point of impact when .he saw the approaching vehicle on an inferior thoroughfare and was traveling at an excessive rate of speed. Neither of these facts was present in the instant case. In this case there was no question of speeding, and neither party saw the other until at the time of the accident. It was just as much, if not more, the duty of Johnson to have seen the stop sign, or looked in both directions when he arrived at the intersection to see if he could safely negotiate it as it was for Ferchaud to do the same. Johnson was guilty of negligence when he ran the stop light on Eden Street, and his negligence was the proximate cause of this accident.
Another case relied upon by the plaintiff appellant is Veal v. Audubon Insurance Company of Baton Rouge, La.App. 1st Cir., 114 So.2d 648, at page 654. In this case, as well as in the Randall case, supra, the vehicle on the favored street ran into the vehicle which was in the intersection coming from the inferior street. These two cases can be very easily differentiated from the case at Bar because in this case the driver on the favored street, or right of way street, was already in the intersection when he was struck by the driver running a stop sign coming from the less favored street.
We feel that the case of Guidry v. Grain Dealers Mutual Insurance Company, La.App. 3rd Cir., 193 So.2d 873 is more appropriate to the instant case. Our Learned Brothers of the Third Circuit in the Guidry case held as follows:
“The district judge made no express finding as to this particular fact. He simply concluded that Sovoie ‘did what he could to avoid the accident after ascertaining that the Guidry automobile was not going to abide by the traffic laws regulating the traffic on Mustange Street.’ This conclusion is supportable by the record. Savoie’s testimony as briefly outlined above, could reasonably be construed to mean that he first saw the Guidry vehicle as it passed the yield sign and entered the intersection. He was not required to ascertain any sooner that Mrs. Guidry was going to violate the yield sign. Our jurisprudence is established that the motorist on a right of way street, with knowledge of the location of a stop sign or yield sign, has to assume that any driver approaching the intersection from the less favored street will observe the law and can indulge in this assumption until he sees, or should see, that the other car has not observed, *149 or is not going to observe, the law. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849 (1948); Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964); Fontenot v. Liberty Mutual Insurance Co., 130 So.2d 462 (3rd Cir.1961).”
See also Polk v. New York Fire and Marine Underwriters, La.App. 3rd Cir., 192 So.2d 667; Davis v. Aetna Casualty and Surety Co., La.App. 3rd Cir., 191 So.2d 320; La. Fire Insurance Co. v. Allstate Insurance Company, La.App. 2d Cir., 186 So. 2d 663; Gauthreaux v. Hogan, La.App. 4th Cir., 185 So.2d 44; Doucette v. Primeaux, La.App. 3rd Cir., 180 So.2d 866.
We therefore conclude that the Trial Judge was correct in his holding that the sole and proximate cause of the accident was the negligence of Johnson.
This brings us to the sufficiency of the award made by the Trial Court. The only Doctor who testified in regard to the injuries for the plaintiff was Dr. Rhodes J. Spedale. According to Dr. Spe-dale, Betty Ricardo gave a history of being injured in the accident on April 18, 1965. She was riding in the back seat of a car when the accident happened and she injured her right hand, right wrist, right elbow and her chest. There was no fractures or dislocations. He concluded that Betty Ricardo’s injuries consisted of contusions and brush burns on the right hand, wrist, right elbow, right ankle and both knees with associated injuries to soft tissues and ligaments attachments. She also sustained a traumatic chest injury with injury to the chest wall. At the present time she was receiving diathermy treatments with active and passive motions and she was progressing satisfactorily. He advised that she continue the treatments for a space from four to six weeks long, after which time a reevaluation of her condition could be made. This was at the date of his report which was June 9, 1965.
With regard to Joseph Ricardo who gave the same history that he was involved in an accident and that he was sitting at the right front seat next to the door. Dr. Spedale concluded that he had sustained a traumatic injury to his chest with injury to the chest wall and intrathoracic cage. He also sustained an injury to the right elbow with associated brush burns and lacerations. At the present time he was receiving diathermy treatments, breathing exercises and was progressing satisfactorily. He advised that the treatment be continued from four to six weeks longer after which time a reevaluation of the condition should be made. This was his report on June 9th, 1965.
The Doctor then testified in regard to Virgie Ricardo who gave a history of having been in the same accident, and she was riding on the right back seat. Dr. Spedale testified that the patient sustained a laceration of the left eye with general contusions and brush burns of the right knee. She also sustained a traumatic low back injury with lumbo sacral illiac strain. Examination also revealed that she was approximately four months pregnant. He advised that she continue having the treatment and observation until after she delivered her child, at which time a reevaluation of her condition should be made.
With regard to Margaret Ricardo she gave the Doctor a history of having been injured in the same accident. She was riding in the middle of the front seat of the Ricardo car. Dr. Spedale testified in his opinion the patient had sustained brush burns of the face, a whiplash injury to her neck and a traumatic low back injury with contusions of the back. She was receiving diathermy treatments with active and passive motion and was progressing satisfactorily. He advised that the treatment continue for a span of from four to six weeks after which a reevaluation of her condition should be made.
*150 This brings us to Juan Ricardo, who was a fifteen months old child at the time of the accident. He was not hospitalized but emergency treatment was given. X-rays were taken of the skull and tetanus toxoid was given.
With regard to all the plaintiffs except the baby they went back to the Doctor twice after the initial examination and have not been back since. They were not hospitalized, except for the original emergency treatment and evidently did not go to any other doctor for any further treatment or evaluation of their injuries.
The Trial Judge after hearing the Doctor’s testimony and the testimony of the plaintiffs gave the awards set out here-inabove. The Trial Judge was invested with a wide discretion in making the awards and the Appellate Courts should not disturb these awards on appeal unless they show a gross abuse of discretion. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, and Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d page 64.
Plaintiffs evidently as an after thought have brought up on this appeal that the American Indemnity Company shall be cast in judgment herein under the “Uninsured Motorist Provision” of the plaintiff Betty Ricardo’s insurance policy.
The uninsured motorist clause is provided for under LSA-R.S. 22:1406(D) (1), which reads as follows:
“D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.”
The facts show that American Indemnity Company’s insured was at the time of the issuance of this policy a Texas domiciliary, residing in Houston, Texas. She was employed by a school and church of Houston, Texas, the company which issued the policy was a Texas insurer and the policy was issued through an insurance agency situated in the City of Houston, Texas. It seems subsequent to that Betty Ricardo came home on account of the illness of her mother and she quit her job in Texas and started teaching in Donaldsonville, although she was unemployed at the time of the trial.
Counsel for plaintiff appellant urges very strongly that the policy shows that she was working in Donaldsonville, Lousi-ana. However, the policy likewise shows the place where the car was to be kept and where she was living at the time she obtained the policy was in Houston, Texas.
We, therefore, hold as did the Trial Judge that the provisions of LSA-R.S. 22:-1406(D) (1) do not apply and that the car was not covered under the “Uninsured Motorist Clause,” in this policy.
For the above and foregoing reasons we find that the judgment of the Trial Court is correct and it is hereby affirmed.
Affirmed.